**Patty Lee SMITH, on behalf of herself and others similarly situated, Appellant in No. 09–1223**

v.

**JOHNSON AND JOHNSON.**

**Patty Lee Smith, on behalf of herself and others similarly situated**

v.

**Johnson and Johnson, Appellant in 09–1292.**

**Nos. 09–1223, 09–1292.**

United States Court of Appeals, Third Circuit.

Argued Dec. 17, 2009.

Filed: Feb. 02, 2010.

---

Michael R. DiChiara (argued), Joseph & Herzfeld, New York, NY, for Appellant–Cross–Appellee.

Francis X. Dee (argued), Stephen F. Payerle, McElroy, Deutsch, Mulvaney & Carpenter, Newark, NJ, Rene M. Johnson, Thomas A. Linthorst, Larry L. Turner, Michael J. Ossip, Morgan, Lewis & Bockius, Princeton, NJ, Allyson N. Ho, Morgan, Lewis & Bochius, Houston, TX, for Appellee–Cross–Appellant.

Before SLOVITER, JORDAN and GREENBERG, Circuit Judges.

## OPINION OF THE COURT

GREENBERG, Circuit Judge.

### I. INTRODUCTION

This matter comes on before this Court on appeal and cross-appeal from an order of the District Court entered on December 30, 2008, granting summary judgment against plaintiff Patty Lee Smith and in favor of defendant Johnson and Johnson ("J & J"). We will affirm on Smith's appeal but will dismiss J & J's cross-appeal.

### II. BACKGROUND

From April 2006 to October 2006, McNeill Pediatrics, a J & J wholly-owned subsidiary, employed Smith in the position of Senior Professional Sales Representative. In essence, Smith's position required her to travel to various doctors' offices and hospitals where she extolled the benefit of J & J's pharmaceutical drug Concerta to the prescribing doctors. J & J hoped that the doctors, having learned about the benefits of Concerta, would choose to prescribe this drug for their patients. Smith, however, did not sell Concerta (a controlled substance) directly to the doctors, as such sales are prohibited by law.

J & J gave Smith a list of target doctors that it created and told her to complete an average of ten visits per day, visiting every doctor on her target list at least once each quarter. To schedule visits with reluctant doctors, Smith had to be inventive and cultivate relationships with the doctor's staff, an endeavor in which she found that coffee and donuts were useful tools. J & J left the itinerary and order of Smith's visits to the target doctors to her discretion. The J & J target list identified "high-priority" doctors that issued a large number of prescriptions for Concerta or a competing product, and Smith could choose to visit high-priority doctors more than once each quarter. J & J gave her a budget for these visits and she could use the money in the budget to take the doctors to lunch or to sponsor seminars.

At the meetings, Smith worked off of a prepared "message" that J & J provided her, although she had some discretion when deciding how to approach the conversation. J & J gave her pre-approved visual aids and did not permit her to use other aids. J & J trained its representatives to gauge a doctor's interest and knowledge about the product, eventually building to a "commitment" to prescribe the drug.

In Smith's deposition she made it clear that she appreciated the freedom and responsibility that her position provided. Though a supervisor accompanied Smith during the doctor visits on a few days each quarter, by her own calculation Smith was unsupervised 95% of the time. As Smith explained during her deposition, "[i]t was

really up to me to run the territory the way I wanted to. And it was not a micro-managed type of job. I had pretty much the ability to work it the way I wanted to work it." App. at 54. According to Smith's job description, she was required to plan and prioritize her responsibilities in a manner that maximized business results. J & J witnesses testified (and J & J documents confirmed) that Smith was the "expert" on her own territory and was supposed to develop a strategic plan to achieve higher sales.

Before her visits, Smith completed pre-visit reports to help her select the correct strategy for that day's visits. At the end of her day, Smith completed post-visit reports summarizing the events of the visits. Smith would refer back to this information before her next visit to the same doctors. After adding up the time she spent writing pre-visit reports, driving, conducting the visits, writing post-visit reports, and completing other tasks, Smith worked more than eight hours per day.

Smith earned a base salary of $66,000 but was not paid overtime, though J & J, at its discretion, could award her a bonus. J & J considered the number of Concerta prescriptions issued in Smith's territory in determining her bonus. The collection of this data and its direct relationship to Smith's efforts was, however, subject to error as purchasers might fill their prescriptions in another territory or with a pharmacy that would not release the pertinent information to J & J.

Smith filed suit seeking overtime pay under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et. seq.* After discovery, including most significantly Smith's deposition, revealed the facts that we just summarized, J & J moved for summary judgment, arguing that she was not entitled to overtime pay under the FLSA because she was exempt from that statute under either the "outside salesman" exemption or the "administrative employee" exemption. 29 U.S.C. § 213(a)(1) (statutory exemptions). Smith urged the District Court to deny J & J's motion for summary judgment and, instead, to grant a motion that she filed to certify the case as a class action.[1]

The District Court addressed these motions in an opinion and order, both dated December 30, 2008. *Smith v. Johnson and Johnson,* No. 06–4787, 2008 WL 5427802 (D.N.J. Dec.30, 2008). The Court analyzed the outside salesman exemption first, but found that it did not apply to Smith. When it turned to the administrative employee exemption, its result was different as the Court found that it did apply to Smith. Accordingly, the Court granted J & J summary judgment. In view of the Court's substantive ruling, Smith's motion for class action certification became moot and the Court denied it.

 Smith then filed this appeal, and J & J filed a cross-appeal. We will affirm on Smith's appeal but dismiss the cross-appeal.[2]

---

1. Smith's situation is not unique, and cases similar to this one are pending in the Courts of Appeals for the Second and Ninth Circuits. Our opinion, however, focuses on Smith and the specific facts developed in discovery in this case. Consequently, we recognize that based on different facts, courts, including this Court, considering similar issues involving sales representatives for other pharmaceutical companies, or perhaps even for J & J, might reach a different result than that we reach here.

2. J & J's cross-appeal urges us to affirm on the alternate basis of the outside salesman exemption. Yet a party, without taking a cross-appeal, may urge in support of an order from which an appeal has been taken any matter appearing in the record, at least if the party relied on it in the district court. *See*

## III. JURISDICTION AND STANDARD OF REVIEW

The District Court had jurisdiction over the FLSA claims under 29 U.S.C. § 216 and 28 U.S.C. § 1331. We have jurisdiction over Smith's appeal under 28 U.S.C. § 1291.

We exercise plenary review over a grant of summary judgment and apply the same standard used by the District Court. *Jefferson Bank v. Progressive Cas. Ins. Co.*, 965 F.2d 1274, 1278 (3d Cir.1992); *Turner v. Schering–Plough Corp.*, 901 F.2d 335, 340 (3d Cir.1990). Federal Rule of Civil Procedure 56(c) sets forth the standard for summary judgment and states that summary judgment shall be granted only if "there is no genuine issue as to any material fact and ... the movant is entitled to judgment as a matter of law." To be material, a disputed fact must be one that might "affect the outcome of the suit under governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). We draw all reasonable inferences in favor of the nonmovant. *Meyer v. Riegel Prods. Corp.*, 720 F.2d 303, 307 n. 2 (3d Cir.1983).

## IV. DISCUSSION

 Under the FLSA, employees who work more than 40 hours per week are entitled to overtime pay unless they fall within one of the FLSA's exemptions. 29 U.S.C. §§ 207, 213. The FLSA is remedial and is construed broadly, but exemptions to it are construed narrowly i.e., against the employer. *Lawrence v. City of Philadelphia*, 527 F.3d 299, 310 (3d Cir. 2008). Congress has empowered the Secretary of Labor to define and delimit the terms of the FLSA's exemptions by regulation. 29 U.S.C. § 213(a). The Secretary's regulations, which were promulgated using notice-and-comment procedures, have controlling weight unless found to be arbitrary, capricious, or manifestly contrary to the statute. *See Chevron v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 843–44, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984). The District Court held that the administrative employee exemption applied to Smith, so we focus on the regulations describing that exemption. *See* 29 C.F.R. § 541.200–.204.

Under the administrative employee exemption, anyone employed in a bona fide administrative capacity is exempt from the FLSA's overtime requirements. 29 U.S.C. § 213(a)(1). The Secretary has defined an administrative employee as someone:

(1) Compensated on a salary or fee basis at a rate of not less than $455 per week ... exclusive of board, lodging or other facilities;

(2) Whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and

*United States v. American Ry. Express Co.*, 265 U.S. 425, 435, 44 S.Ct. 560, 564, 68 L.Ed. 1087 (1924). Consequently, J & J's cross-appeal is superfluous and we will dismiss it. *See Kontakis v. Beyer*, 19 F.3d 110, 112 n. 1 (3d Cir.1994). But the dismissal does not change the arguments at issue, though it establishes that J & J should not have filed its reply brief in support of its cross-appeal. We have disregarded that brief inasmuch as J & J should not enjoy the benefit of having an opportunity for extra briefing due to its own procedural error. Indeed, in its brief J & J recited that it recognized that it could have raised the outside salesman exemption without a cross-appeal but that it filed the "notice of cross-appeal out of an abundance of caution." Appellee's br. at 3 n. 3. We can understand J & J's counsel's caution with respect to filing a notice of cross-appeal, but it should not have filed the reply brief on the cross-appeal without leave of this Court, as it recognized that the cross-appeal probably was not necessary.

(3) Whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.

29 C.F.R. §§ 541.200. The parties agree that Smith's salary qualifies her for the administrative employee exemption, but dispute her qualification for that exemption under the remaining two sections.

We find that the administrative employee exemption applies to Smith. While testifying at her deposition Smith elaborated on the independent and managerial qualities that her position required. Her non-manual position required her to form a strategic plan designed to maximize sales in her territory. We think that this requirement satisfied the "directly related to the management or general business operations of the employer" provision of the administrative employee exemption because it involved a high level of planning and foresight, and the strategic plan that Smith developed guided the execution of her remaining duties. *See* 29 C.F.R. § 541.203(e) ("Human resources managers who formulate, interpret or implement employment policies and management consultants who study the operations of a business and propose changes in organization generally meet the duties requirements for the administrative exemption."); *Reich v. John Alden Life Ins. Co.*, 126 F.3d 1, 3–5, 12 (1st Cir.1997) (applying administrative employee exemption to marketing representatives who dealt with licensed independent insurance agents who, in turn, dealt with purchasers of insurance products).

When we turn to the "exercise of discretion and independent judgment with respect to matters of significance" requirement, we note that Smith executed nearly all of her duties without direct oversight. In fact, she described herself as the manager of her own business who could run her own territory as she saw fit. Given these descriptions, we conclude that Smith was subject to the administrative employee exemption. *Cf. Cote v. Burroughs Wellcome Co.*, 558 F.Supp. 883, 886–87 (E.D.Pa.1982) (applying administrative employee exemption to medical "detailer" even though description of employee's duties was more parsimonious than Smith's description of her duties here).

Smith nevertheless has asked us to limit the significance of her testimony and find that she lacked discretion with respect to matters of significance. Indeed, her attorney contended at oral argument on this appeal that Smith overinflated her importance during the deposition, and that we should consider her statements mere puffery. We are unwilling to ignore Smith's testimony to hold that there is an issue of material fact merely because of Smith's request that we do so. In this regard, we point out that when Smith testified she surely understood the significance of her testimony in the context of this case. In the circumstances before us, we accept Smith's deposition testimony as an accurate description of her position and thus we will affirm the order granting J & J summary judgment.[3]

In reaching our result we have not overlooked our opinion in *Martin v. Cooper*

**3.** We also point out that although the "sham affidavit" doctrine is not applicable here, the principle of that doctrine surely is. Under the sham affidavit doctrine a court will disregard an affidavit inconsistent with an affiant's prior deposition testimony when a party moves for summary judgment on the basis of the deposition unless the party relying on the affidavit in opposition to the motion can present a legitimate reason for the discrepancies between the deposition and the affidavit. *See Baer v. Chase*, 392 F.3d 609, 623–25 (3d Cir. 2004). We do not regard Smith's counsel's contention that Smith's deposition testimony was puffery as a reason to disregard the deposition.

*Elec. Supply Co.,* 940 F.2d 896 (3d Cir. 1991), on which Smith heavily relies. Rather, we find that *Cooper* is distinguishable on the facts. Moreover, we agree with the District Court that changes in the Secretary's regulations since *Cooper* make that case inapplicable here. *See Smith,* 2008 WL 5427802, at *8–9.[4]

## V. CONCLUSION

The District Court's order of December 30, 2009 in No. 09–1223 will be affirmed and J & J's cross-appeal in No. 09–1292 will be dismissed. The parties will bear their own costs on this appeal.