**Kristin BAUM, on behalf of herself and all others similarly situated, Appellant**

v.

**ASTRAZENECA LP (also known as AstraZeneca Pharmaceuticals, LP or Astra–Zeneca, Inc.).**

No. 09–2150.

United States Court of Appeals, Third Circuit.

Submitted Pursuant to Third Circuit L.A.R. 34.1(a) Jan. 14, 2010.

Filed: March 24, 2010.

Before: SCIRICA, Chief Judge, BARRY, and SMITH, Circuit Judges.

OPINION

SMITH, Circuit Judge.

Kristin Baum appeals the District Court's entry of summary judgment in favor of AstraZeneca, her former employer. Baum sought relief under the Pennsylvania Minimum Wage Act ("PMWA"), 43 P.S. § 333.101 *et seq.*, based on AstraZeneca's purported failure to pay her for overtime work. The District Court concluded that Baum fell under the outside salesperson exemption of the PMWA, *id.* § 333.105(a)(5), and entered summary

judgment in favor of AstraZeneca.[1] We will affirm on different grounds.

## I.

### Facts

Baum worked as a Pharmaceutical Sales Specialist ("PSS") for AstraZeneca from May 1, 2003, to November 1, 2006.[2] As a PSS, Baum promoted AstraZeneca pharmaceuticals directly to physicians. She regularly visited approximately 150 physicians in her assigned territory, answering questions about AstraZeneca products, building relationships with physicians and their staffs, and trying to get physicians to commit to prescribing AstraZeneca products. Because company policy, federal regulations, and federal laws controlled the scope and nature of Baum's interactions with physicians, AstraZeneca trained her on how to conduct a physician visit. Some of Baum's interactions with physicians were "canned speeches" she learned through AstraZeneca's in-house training.

To gain access to physicians, Baum would, among other things, schedule "access meals" where she would provide breakfast, lunch, or dinner to a physician, the physician's staff, or both. These meals provided Baum opportunities to promote AstraZeneca products to physicians and their staffs. Baum also set up "prep" programs where physicians, some of whom were selected by her, addressed other physicians on medical topics. In the same vein, Baum arranged peer-to-peer meetings where physicians selected by AstraZeneca would meet with other physicians.

Baum normally worked sixty to seventy hours per week. She called on eight or nine physicians a day, amounting to ten to twelve hours a day in the field. On top of her field work, Baum spent approximately an hour each day checking e-mails, filling out expense reports, and working on spreadsheets. Baum's base salary was $63,000.

### Procedural History

Baum filed suit against AstraZeneca on March 27, 2007, in the Court of Common Pleas of Westmoreland County, Pennsylvania. On April 20, 2007, AstraZeneca removed the case to the United States District Court for the Western District of Pennsylvania. AstraZeneca later moved for summary judgment, arguing that Baum fell under the outside salesperson and administrative employee exemptions of the PMWA. The District Court concluded that Baum fell under the former exemption and granted AstraZeneca's motion for summary judgment on March 31, 2009. Baum filed this timely appeal.

## II.

We exercise "plenary review over the District Court's grant of summary judgment[.]" *Shuman ex rel. Shertzer v. Penn Manor Sch. Dist.*, 422 F.3d 141, 146 (3d Cir.2005) (quoting *Abramson v. William Paterson Coll. of N.J.*, 260 F.3d 265, 276 (3d Cir.2001)). A court should grant summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c)(2). In applying that standard, "a court must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." *Shuman*, 422 F.3d

---

1. We have jurisdiction under 28 U.S.C. § 1291. The District Court exercised jurisdiction under 28 U.S.C. § 1332.

2. Because we write only for the parties, we will presume knowledge of the record and recount the facts only briefly.

at 146 (quoting *Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir.1994)). "We may affirm the District Court on any grounds supported by the record." *Nicini v. Morra*, 212 F.3d 798, 805 (3d Cir.2000) (en banc).

### III.

Under the PMWA's administrative employee exemption, anyone employed in a "bona fide ... administrative ... capacity" is exempt from the PMWA's overtime protections. 43 P.S. § 333.105(a)(5). The exemption applies to employees whose (1) salaried compensation is at least "$250 per week, exclusive of board, lodging or other facilities," 34 Pa.Code § 231.83(5), (2) "primary duty consists of the performance of office or nonmanual work directly related to management policies or general operation of his employer or the customers of the employer," *id.* § 231.83(1), and (3) primary duty "requir[es] the exercise of discretion and independent judgment," *id.* § 231.83(5).[3] "In general, the exercise of discretion and independent judgment involves the comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered." 29 C.F.R. § 541.202(a) (explaining "discretion and independent judgment" for the purposes of the Fair Labor Standards Act).[4]

Baum's employment at AstraZeneca satisfied these requirements.[5]

The salary requirement of $250 per week was indisputably satisfied. Baum's base salary was $63,000, which amounts to approximately $1,211 per week. The second requirement, performance of nonmanual work directly related to AstraZeneca's general operation, *see* 34 Pa.Code § 231.83(1), was satisfied by Baum's marketing and advertising of AstraZeneca's products, *see* 29 C.F.R. § 541.201(b) ("Work directly related to ... general business operations includes ... work in ... advertising [and] marketing[.]"). *See Reich v. John Alden Life Ins. Co.*, 126 F.3d 1, 12 (1st Cir.1997) (applying FLSA administrative employee exemption to insurance marketing representatives); *see also Reich v. Avoca Motel Corp.*, 82 F.3d 238, 240 n. 5 (8th Cir.1996) (stating that "engaging in 'public relations' work to gain repeat customers" was an administrative task under the FLSA). Baum visited physicians and organized events, such as access meals, prep programs, and peer-to-peer meetings.[6] These activities "disseminat[ed] information to the marketplace [and increased] understanding [of] customers and competitors" and thus were "directly related to [AstraZeneca's general]

---

**3.** The exemption also applies under other circumstances irrelevant to the instant case.

**4.** Pennsylvania courts have looked to federal law regarding the Fair Labor Standards Act ("FLSA") for guidance in applying the PMWA. *Commonwealth of Pennsylvania Dept. of Labor and Indus., Bureau of Labor Law Compliance v. Stuber*, 822 A.2d 870, 873 (Pa.Commw.Ct.2003), *aff'd*, 580 Pa. 66, 859 A.2d 1253 (2004) (applying "federal case law" regarding the FLSA to a PMWA claim). According to the Pennsylvania courts, "it is proper to give deference to federal interpreta-

tion of a federal statute when the state statute substantially parallels it." *Id.*

**5.** We need not reach the issue of whether Baum fell under the outside salesperson exemption of the PMWA, 43 P.S. § 333.105(a)(5). We may affirm the District Court on any grounds supported by the record. *Nicini*, 212 F.3d at 805.

**6.** Our focus on promotion, advertising, and marketing should not be construed to have any bearing on the issue of whether a PSS makes sales for the purposes of the PMWA. That issue is not addressed in this decision.

operations[.]" *John Alden Life Ins. Co.,* 126 F.3d at 12.

The third requirement was also satisfied. Baum's "work requir[ed] the exercise of discretion and independent judgment." 34 Pa.Code § 231.83(5). Baum had significant discretion in how she would approach physicians, whether it be through access meals, peer-to-peer meetings, or other means. In other words, she had to "compar[e] and . . . evaluat[e] . . . possible courses of conduct, and . . . mak[e] a decision after the various possibilities ha[d] been considered." 29 C.F.R. § 541.202(a). According to her resume, Baum "used innovative themes to gain access in offices where the physicians were difficult to see[.]" At her deposition she stated that, depending on the physician, she would change her promotion strategy:

Q: How would you change your promotion around depending on [the needs of the practice]?

A: If [the physician was not] writing, then we would just ask more questions. Get more data from the doctor. And do what we could to get them to write more. Given the tools we had by the company. I mean, if it meant bringing in a national speaker. I mean, whatever approved resources that I had there approved by the company, that is what I would use.

In addition, Baum spent the majority of her time in the field, unsupervised, calling on physicians. *See* 29 C.F.R. § 541.202(c) (stating that an employee exercises discretion and independent judgment where she "has authority to make an independent choice, free from immediate direction or supervision").[7] Each day, Baum met with other PSSs and they collectively determined which physicians each PSS would visit that day. Baum decided how much time she would spend with a given physician depending on whether the physician was interested in her product. She also decided whether she would use a detail aid in her visit. Every visit was somewhat unique because each physician had different preferences, interests, and availability. After each visit, Baum would make post-call notes to record the details of the conversation. On future visits, she would avoid repeating a message the physician had recently heard. Overall, Baum's day-to-day activities involved making numerous independent judgments on how best to promote AstraZeneca's products.

Moreover, Baum's duties were very similar to the plaintiff's duties in *Smith v. Johnson & Johnson,* 593 F.3d 280 (3d Cir.2010), where we held that a pharmaceutical sales representative fell under the administrative employee exemption of the FLSA. *Id.* at 285. In *Smith,* the plaintiff, Patty Lee Smith, was tasked with visiting an average of ten physicians per day to extol the benefits of Johnson & Johnson's pharmaceuticals. *Id.* at 282. Baum had a similar workload. She visited eight or nine physicians per day. Smith, in an effort to cultivate relationships with physicians, would bring food and coffee to physicians' offices. *Id.* Baum similarly organized access meals. On physician visits, Smith "worked off of a prepared 'message' " provided by her employer, *id.,* just like Baum. Numerous other similarities exist. For example, both individuals could

---

7. Baum argues that she was subject to extensive oversight by her manager because she had to check her voice mail and e-mail three times a day. Mere oversight by a manager, however, cannot overwhelm the autonomy with which Baum operated on a daily basis while she was out in the field. *See* 29 C.F.R. § 541.202(c) ("[E]mployees can exercise discretion and independent judgment even if their decisions or recommendations are reviewed at a higher level.").

use only certain approved visual aids in their presentations to physicians, *id.*, both were trained on how to conduct a physician visit by their employer, *id.*, and both prepared post-call notes after physician visits, *id.* at 283. Thus, our conclusion that Baum exercised discretion and independent judgment in her day-to-day activities is further supported by the numerous similarities between Baum and Smith's roles. *See id.* at 282–83.

## IV.

To summarize, Baum's salary of $1,211 per week exceeded the minimum salary requirement of $250 per week. Her promotional activities directly related to the general operation of AstraZeneca because she was involved in advertising and marketing AstraZeneca's products. Baum's day-to-day interactions with physicians required her to exercise a significant amount of discretion and independent judgment. Baum chose how she would promote AstraZeneca products to each physician in her territory. Her approach would change depending on the physician she was visiting. Based on these determinations, we conclude that Baum satisfied all the requirements of the PMWA's administrative employee exemption, and she cannot avail herself of the PMWA's overtime protections. Thus, we will affirm the District Court's judgment.