NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-2256
_____

SHAWN SOUTHERLAND

v.

COMMONWEALTH OF PENNSYLVANIA; MONTGOMERY COUNTY;
WHITEMARSH TOWNSHIP POLICE DEPARTMENT MONTGOMERY COUNTY;
DETECTIVE CRAIG C. CUBBIN ID #27374, 49, WHITEMARSH TOWNSHIP
POLICE DEPARTMENT;  CUBBIN, SERGEANT COTTER
WHITEMARSH TOWNSHIP POLICE DEPARTMENT

DETECTIVE CRAIG C. CUBBIN and SGT. COTTER,
                                                                          Appellants.

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
(D.C. Civ. Action No. 08-5333)
District Judge: Honorable John Fullam

_____

Argued June 10, 2010

Before: AMBRO, CHAGARES, and GREENAWAY, JR., Circuit Judges

(Opinion Filed: August 6, 2010)


Nathan E. Denning [Argued]
Karen C. Daly
Ezra D. Rosenberg
Dechert LLP
Cira Centre,
2929 Arch Street, 18th Floor

Philadelphia, PA 19104

Attorneys for Appellee

Christopher P. Boyle, Sr. [Argued]
Marshall, Dennehey, Warner, Coleman & Goggin, P.C.
620 Freedom Business Center
Suite 300
King of Prussia, PA 19406

Attorney for Appellants

_____

OPINION

_____

GREENAWAY, JR., Circuit Judge

Appellants Detective Craig Cubbin and Sergeant James Cotter (together, "Appellants") appeal the District Court's judgment concerning the existence of probable cause for their warrantless arrest of appellee Shawn Southerland. The District Court entered summary judgment in favor of Southerland on his 42 U.S.C. § 1983 claim alleging that Appellants violated his Fourth Amendment rights, and denied Appellants' motion for summary judgment seeking qualified immunity. For the following reasons, we will vacate the District Court's order and remand.

## I. **BACKGROUND**

We write solely for the benefit of the parties and recount only the essential facts.

On October 14, 2008, Sgt. Cotter, of the Whitemarsh Township Police Department

2

("WPD"), received a phone call from Detective Rick Garcia ("Det. Garcia"), of the Bronx Homicide Task Force at the New York Police Department ("NYPD"). Det. Garcia told Sgt. Cotter that he was looking for Shawn Southerland regarding a homicide investigation. Det. Garcia had information that Southerland was working as a golf caddie at the Philadelphia Cricket Club, and requested the WPD's assistance in locating him. Appellants agreed. At the time, there was no warrant for Southerland's arrest.

Appellants arrived at the Cricket Club and approached Southerland as he walked off the golf course. Appellants state that when they asked Southerland for identification, he replied that he did not have any, and identified himself repeatedly as "Keith Davis." After Appellants asked Southerland to remove what appeared to be a wallet from his rear pocket, he confessed that he was not Keith Davis, but Shawn Southerland.[1]

Southerland was taken into custody at the WPD headquarters and charged with false identification, in violation of Pennsylvania law. The false identification statute provides that

> [a] person commits an offense if he furnishes law enforcement with false information about his identity after being informed by a law enforcement officer who is in uniform or who has identified himself as a law enforcement officer that the person is the subject of an official investigation of a violation of law.

18 Pa. Cons. Stat. § 4914.[2] Det. Cubbin withdrew this charge six days later, on October

---

Southerland has averred in his complaint that he did not falsely identify himself.

Appellants also charged Southerland with disorderly conduct, in violation of 18 Pa. Cons. Stat. § 5503, which states:

3

Southerland subsequently filed this 42 U.S.C. § 1983 action, alleging, *inter alia*, that Appellants lacked probable cause for his arrest. Appellants moved to dismiss Southerland's claims, pursuant to Federal Rule of Civil Procedure 12(b)(6), and Southerland opposed the motion and also moved for summary judgment, pursuant to Federal Rule of Civil Procedure 56. Construing Appellants' motion as one for summary judgment, see Fed. R. Civ. P. 12(d), the District Court granted Southerland's motion and denied Appellants' motion. The District Court concluded that Southerland's arrest was unconstitutional because it was only a pretext to keep Southerland in custody until the NYPD obtained a properly issued warrant for his arrest. The District Court also rejected Appellants' qualified immunity defense, holding that a reasonable officer could not believe that arresting Southerland on pretextual charges was permitted under the Fourth Amendment. Appellants timely appealed.

## II. JURISDICTION & STANDARD OF REVIEW

The District Court exercised jurisdiction over Southerland's § 1983 claim,

---

A person is guilty of disorderly conduct if, with the intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he: (1) engages in fighting or threatening, or in violent or tumultuous behavior; (2) makes unreasonable noise; (3) uses obscene language, or makes an obscene gesture; or (4) creates a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor.

This charge was dropped, along with the false identification charge, on October 20, 2008.

pursuant to 28 U.S.C. § 1331.  We have appellate jurisdiction under 28 U.S.C. § 1291.

We review the District Court's grant of summary judgment de novo.  Azur v. Chase

Bank, USA, Nat'l Ass'n, 601 F.3d 212, 216 (3d Cir. 2010).  We also review the denial of

summary judgment de novo when the appeal "is raised in tandem with an appeal of an

order granting a cross-motion for summary judgment."  Transportes Ferreos de Venezuela

II CA v. NKK Corp., 239 F.3d 555, 560 (3d Cir. 2001) (noting also that cross-motions

"are no more than a claim by each side that it alone is entitled to summary judgment").

We affirm a district court's grant of summary judgment if there is no genuine issue as to

any material fact and the movant is entitled to judgment as a matter of law.  Montanez v.

Thompson, 603 F.3d 243, 248 (3d Cir. 2010). This requires viewing the facts in the light

most favorable to the non-moving party and drawing all inferences in that party's favor.

Id.

### III.  ANALYSIS

**A.  Fourth Amendment Violation**

To prevail on a § 1983 claim, Southerland must show that Appellants, under the

color of state law, deprived him of a federal constitutional or statutory right.  Miller v.

Mitchell, 598 F.3d 139, 147 (3d Cir. 2010).  Southerland contends that Appellants

violated the Fourth Amendment, which mandates that all warrantless arrests be supported

by "probable cause to believe that a criminal offense has been or is being committed."

Wright v. City of Philadelphia, 409 F.3d 595, 601 (3d Cir. 2005).

5

Probable cause exists if, at the moment the arrest was made, "the facts and circumstances within [the arresting officers'] knowledge . . . were sufficient to warrant a prudent man in believing that [the person to be arrested] had committed or was committing an offense." Snell v. City of York, 564 F.3d 659, 671 (3d Cir. 2009) (citation and internal quotation marks omitted). Although evidence establishing probable cause need not be as strong as would be needed to support a conviction, there must be a "fair probability" that the person committed the relevant crime. Wright, 409 F.3d at 602. Whether any particular set of facts suggests that probable cause exists "requires an examination of the elements of the crime at issue." Id.

Appellants rely on Pennsylvania's false identification statute as their basis for finding probable cause to arrest Southerland.[3] The District Court failed to evaluate the record in the context of the elements of this offense. Instead, it focused on the "pretextual" nature of the arrest to resolve the probable cause inquiry. Pretext, though, does not affect the constitutionality of Appellants' conduct. See Devenpeck v. Alford, 543 U.S. 146, 153 (2004) (stating that an officer's subjective intent or reason for arrest is irrelevant to the probable cause analysis).

Exploring the facts as they relate to the elements of false identification, it is clear

---

Although probable cause need only exist as to *any* offense that *could* have been charged under the circumstances, Barna v. City of Perth Amboy, 42 F.3d 809, 819 (3d Cir. 1994), Appellants have not suggested that probable cause existed, at that time, for any other offense—not even disorderly conduct, with which they had initially charged Southerland, and then later dropped.

6

that the record, when viewed in the light most favorable to Appellants, reflects that Southerland furnished law enforcement with false information about his identity. Presumably, the District Court recognized this. (App. 00004 (stating that Appellants allege Southerland did not initially admit to his identity although Southerland alleges to have immediately truthfully identified himself).) Yet, this is not the end of the inquiry. There is a critical element to the offense of false identification that the District Court neglected entirely: whether Southerland falsely identified himself "*after* being informed . . . that [he] is the *subject* of an official investigation of a violation of law."[4] 18 Pa. Cons. Stat. § 4914 (emphasis added). In order to determine whether Appellants violated Southerland's Fourth Amendment rights, the District Court must ascertain whether there is a genuine issue of material fact with regard to this element of the offense.

The record contains four important sources of information that shed light on this issue: the police report, the affidavit of probable cause, Det. Cubbin's affidavit, and Southerland's amended complaint. Citing to the police report, Appellants state that they advised Southerland that "we were detectives from Whitemarsh Township Police and that we were requested by the NYPD to assist them in a death investigation [and that] [t]his was the reason we were speaking with him." (App. 139-40 (police report).) The affidavit of probable cause has a similar iteration of the relevant facts. (App. 186 ("Sgt. Cotter

---

The parties do not appear to dispute the remaining element of false identification, that is, that the officer speaking to Southerland was "in uniform or [] ha[d] identified himself as a law enforcement officer." 18 Pa. Cons. Stat. § 4914.

stated we were assisting New York Police with an investigation and asked [Southerland] his name.").) Neither Det. Cubbin's affidavit nor Southerland's complaint purport to describe an introduction by Appellants to Southerland, but Appellants urge us to view those documents as suggesting that before Southerland falsely identified himself, he was told that he was a "person of interest in a New York homicide."[5]

On remand, the District Court must determine whether there is a genuine issue of

---

Appellants contend that viewing the facts in "light most favorable to the non-movant" requires us to read paragraph 13 of Det. Cubbin's affidavit—which states the officers told Southerland that "he was a person of interest in a New York homicide"—as having occurred before paragraph 12, which states that "after repeatedly claiming he was 'Keith Davis,' Southerland/Davis finally admitted to being Shawn Southerland." (App. 396.) Appellants push this reading of the affidavit in spite of the fact that all other paragraphs describing the events of that day proceed chronologically.

Appellants similarly posit that Southerland's complaint weighs in their favor because Southerland stated that he was told he was a person of interest. (App. 12 ¶¶ 11-12.) Yet, as in Det. Cubbin's affidavit, in Southerland's complaint, this statement follows after Southerland's statement that he told the truth about his identity. (Id.)

Appellants are correct that, in considering Southerland's motion, the record is to be viewed in the light most favorable to Appellants and the District Court is not to engage in fact finding. We additionally note, however, that not all factual disputes constitute a "genuine" issue of fact precluding summary judgment. See, e.g., United States v. Premises Known as 717 South Woodward St., 2 F.3d 529, 533 (3d Cir. 1993) (discussing meaning of "genuine" issue of fact, stating, "[a]lthough entitled to the benefit of all *justifiable* inferences from the evidence . . . . [I]f the nonmoving party's evidence, when viewed in the context of all of the evidence, could not be credited by a rational juror, summary judgment may be granted." (emphasis added) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49, 255 (1986))); Jiminez v. All Am. Rathskeller, Inc., 503 F.3d 247, 253 (3d Cir. 2007) (emphasizing that not all issues are "genuine," noting that "Liberty Lobby specifically recognizes the trial judge's power to grant summary judgment on disputed records"); Liberty Lobby, 477 U.S. at 252 (stating "[t]he mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient" to preclude summary judgment).

material fact, focusing especially on whether Southerland was told that he was the subject of an official investigation of a violation of law prior to furnishing false information. This requires both a review of the record, to determine if there is a genuine dispute of fact, and a consideration of probable cause, to determine if the dispute of fact is material.[6] See Smith v. Johnson & Johnson, 593 F.3d 280, 284 (3d Cir. 2010) ("To be material, a disputed fact must be one that might 'affect the outcome of the suit under governing law.'" (quoting Liberty Lobby, 477 U.S. at 248)).

**B.  Qualified Immunity**

The District Court's analysis of qualified immunity is not only conclusory, but, like the analysis of probable cause, it is incorrectly predicated on the issue of "pretext."  On remand, if the District Court finds that probable cause was lacking for Southerland's arrest, it should proceed to reconsider whether Appellants are entitled to qualified immunity.

The Supreme Court has distilled the qualified immunity analysis into two inquiries. First, the constitutional question is "whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right."  Pearson v. Callahan, 129 S.Ct. 808, 816

---

The District Court should also be mindful of our supervisory rule in Forbes v. Twp. of Lower Merion, 313 F.3d 144 (3d Cir. 2002).  If the court denies both parties' motions for summary judgment, it will need to "specify those material facts that are and are not subject to genuine dispute and explain their materiality."  Id. at 146.  This rule is necessary to allow us to determine the limits of our jurisdiction should we be presented with an interlocutory appeal of a denial of summary judgment for qualified immunity.  Id. at 148-49.

9

(2009) (quoting Saucier v. Katz, 533 U.S. 194, 201 (2001)) (citation omitted). Second, the qualified immunity question is "whether the right at issue was 'clearly established' at the time of a defendant's alleged misconduct." Id. The constitutional question will have been resolved by the District Court's probable cause analysis. The qualified immunity question will be the last in determining whether summary judgment is proper.

The doctrine of qualified immunity serves to protect officers from civil liability "when they perform their duties reasonably." Pearson, 129 S.Ct. at 815. Accordingly, it gives "ample room for mistaken judgments," Hunter v. Bryant, 502 U.S. 224, 229 (1991), whether the official's mistake is a mistake of fact, mistake of law, or mistake based on mixed questions of fact and law, Pearson, 129 S.Ct. at 815.

We intimated in Curley v. Klem that the constitutional question of the Saucier analysis focuses on whether there was a reasonable mistake of fact, whereas the qualified immunity question addresses reasonable mistakes of law. 499 F.3d 199, 214 (3d Cir. 2007); see also Saucier, 533 U.S. at 204-06 (distinguishing between inquiry of Fourth Amendment violations and inquiry of qualified immunity entitlement). A mistake of fact is an officer's misperception of the circumstances by which he is surrounded. See, e.g., Curley, 499 F.3d at 214-15 (discussing whether it was reasonable for officer to make the factual mistake of believing that another officer, at whom he shot, was the armed and dangerous suspect); Couden v. Duffy, 446 F.3d 483, 502 (3d Cir. 2006) (Weis, J., dissenting) (stating officers' actions were protected by qualified immunity because officer

10

made factual mistake of believing he was confronting a person in the commission of burglary, when in fact person was resident of home); Saucier, 533 U.S. at 204 (hypothesizing in excessive force case about a reasonable but mistaken belief of fact that suspect was likely to fight back). We protect reasonable mistakes of fact because we recognize that "police officers are often forced to make split-second judgments in circumstances that are tense, uncertain, and rapidly evolving." Saucier, 533 U.S. at 205 (quoting Graham v. Connor, 490 U.S. 386, 397 (1989)).

The qualified immunity question, on the other hand, answers whether an officer made a reasonable mistake of law. Curley, 499 F.3d at 214; see also Saucier, 533 U.S. at 205. To understand what constitutes a mistake of law, it is necessary to understand the qualified immunity inquiry. The dispositive question in determining whether an officer violated "clearly established" constitutional rights is whether "it would have been clear to a reasonable officer" that his conduct was unlawful—here, that "there was no probable cause to arrest." Gilles v. Davis, 427 F.3d 197, 203 (3d Cir. 2005). More specifically, the question is whether, "in light of pre-existing law," the "contours" of the plaintiff's rights were sufficiently clear such that the unlawfulness of the officer's conduct, in the specific circumstances that he confronted, would have been apparent to a reasonable person. Paff v. Kaltenbach, 204 F.3d 425, 436 (3d Cir. 2000).

A mistake of law, then, is a mistake as to the legal constraints on particular police conduct. Saucier, 533 U.S. at 205; see, e.g., Gilles v. Davis, 427 F.3d 197, 205-06

(finding qualified immunity protected officer who arrested woman for using abusive language, because, "[a]t the least, reasonable minds could disagree whether Gilles' speech was protected" under First Amendment); Egolf, 526 F.3d 104, 110-11 & nn. 10-11 (3d Cir. 2008) (holding officer entitled to qualified immunity after arresting protestors for lewdness when they exposed their buttocks because, given lack of clarity about what constitutes nudity under Pennsylvania lewdness statute, "the parameters of probable cause were confusing"); Couden, 446 F.3d at 492 (noting qualified immunity protects officers from the "hazy border" between excessive and acceptable force). We protect reasonable mistakes of law because "[i]t is sometimes difficult for an officer to determine how the relevant legal doctrine . . . will apply to the factual situation the officer confronts." Saucier, 533 U.S. at 205. This is especially true in the Fourth Amendment context where the jurisprudence "must accommodate limitless factual circumstances," and our precedents do "not always give a clear answer" as to what the law requires of a government official. Id.

Appellants' most viable argument, which they have barely articulated, is that they are entitled to qualified immunity because they made a mistake of law. They suggest that, if informing Southerland that they were speaking to him in order to assist the NYPD with a death investigation is insufficient to create probable cause, the insufficiency of Appellants' words would not have been clear to a reasonable officer. We remand to the District Court to conduct, if necessary, the appropriate qualified immunity analysis.

12

**IV.**

For the foregoing reasons, we will vacate and remand to the District Court for further proceedings consistent with this opinion.