ROTH, Circuit Judge,
dissenting:
The majority today imposes a new limit on claims under the PMWA, holding as a matter of law that Rafael Espinoza’s travel time is not compensable because it did not involve “more than simply driving to or from a work site.”[1] Because I cannot agree with this narrow view of “duty” under the PMWA in light of the breadth of the term, the statute’s policy objectives, and the approach of the analogous provisions of the FLSA, and because I believe that Espinoza’s travel took place during “normal working hours” as defined in the PMWA, I respectfully dissent.
I.
The parties here agree to nearly all the material facts. As Espinoza alleged in his complaint, he was assigned to various project sites located hundreds of miles away *108 from his Pennsylvania residence. Such scheduling required him to stay in hotels, motels, or other temporary housing because the project locations made it impossible for him to commute on a daily basis. The parties agree that Atlas paid for these temporary housing facilities.[2] Atlas generally expected Espinoza to arrive at the hotel, motel, or other temporary housing unit near the assigned project site on the evening before the first 10.5-hour shift. As a result, Espinoza was required to engage in at least some travel between 7:00 a.m. and 5:30 p.m.—the hours he would work on the days of his shift—on days when he was not actually scheduled to work. Espinoza further explained that it was impossible to perform his job without engaging in such travel and that Atlas was strict in its requirement that he travel from his Pennsylvania residence to the project site vicinity. Espinoza does not allege that he was required to use a vehicle provided by the defendants, drive a route dictated by the defendants, or perform any, additional tasks during this travel. Travel to the work site was mandatory, however; if Espinoza refused to engage in such travel, he would be terminated.
The core questions before us, therefore, are two matters of law: (1) whether travel alone can constitute a “duty of employment” under the PMWA; and (2) whether “normal working hours” as defined by the PMWA is limited to an employee’s scheduled hours. Importantly, at this stage of litigation,, our role is not to conclusively decide that Espinoza did travel during normal working hours, or that his travel was actually a duty of his employment; rather, we must simply determine whether these conclusions are permissible as a matter of law. I believe that the legal definitions of “normal working hours” and “duty of employment” are broad enough to potentially encompass Espinoza’s claimed hours in light of the clear text of the PMWA, the underlying policy goals of the Pennsylvania General Assembly, and the analogous provisions of the FLSA.
II.
Turning to the first question presented—whether travel alone can constitute a duty of employment under the PMWA—I believe the majority errs in finding that the phrase “duty of employment” excludes Espinoza’s travel time as a matter of law. Courts have properly recognized that the existence and scope of a “duty” is highly fact-specific, and generally inappropriate for resolution at the dismissal stage.[3] Indeed, the AMTRAK case cited by the majority expressly notes that “it is impossible to determine whether this [time spent travelling to and from work sites] is ‘part of the duties of the employe[e]’ without interpreting the collective bargaining agreement to see. exactly what the duties *109 of the employees are,” suggesting that travel time is not inherently outside the definition of the term “duty.” [4] Given that Atlas paid for the temporary housing facilities at which he stayed and that the work sites were varied and unpredictable—factors which the majority acknowledges “may shed light on whether travel is part of the employee’s duties”[5]—I would not say that Espinoza’s allegations are insufficient at this stage.
The majority, however, narrows the legal definition of “duty” under the PMWA by asking only “whether the employees were performing work-related tasks, in addition to travel, during their travel time.”[6] Even if I were to share the majority’s desire to create a legal rule about duty, I would disagree with the majority’s limitation, as it simply has no basis in the text of the PMWA or its interpretive case law. Indeed, statutory interpretation would suggest “duty” actually encompasses Espinoza’s travel time.
When interpreting a statute, we begin with the plain meaning of the text.[7] Here, the plain meaning of the word “duty” is broad and does not suggest any limitation that excludes travel. Black’s Law Dictionary defines a “duty” as “[a] legal obligation that is owed or due to another and that needs to be satisfied.”[8] An obligation “may refer to anything that a person is hound to do or forbear from doing....”[9] These definitions make clear that duty is an expansive term in and of itself, which can encompass a broad range of activities. Its breadth is further evidenced by the fact that Black’s goes on to provide a nonexhaustive list of twenty-four examples of specific types and sources of duties.[10] Thus, to the extent the phrase “duty of employment” has a plain meaning, it is broad. At the very least, the phrase is sufficiently ambiguous that it provides no basis for imposing the majority’s new limitation.
Based on my conclusion that the definition of “duty” is ambiguous, I would interpret the proper meaning of the phrase here by looking to the FLSA regulation to determine whether Espinoza’s claimed hours are compensable as a matter of law. When interpreting ambiguous language in a statute, we employ a canon of statutory construction which interprets the same language used in analogous laws as possessing similar meanings.[11] Invoking this in pari materia principle, courts have used the FLSA in interpreting the PMWA, noting that “it is proper to give deference to federal interpretation of a federal statute when the state statute substantially parallels it.”[12] Courts have found provisions of *110 the PMWA to “substantially parallel” the FLSA even where the language is not identical, so long as the essential ideas and terms of art are the same.[13] Thus, absent clear textual differences, the PMWA should be read coextensively with the FLSA “when they relate to the same persons. or things or to the same class of persons or things [because they] must be construed together if possible.”[14]
Here, it is clear that the PMWA and the FLSA both seek to protect hourly employees from abusive labor practices. Thus, the statutes relate to the same class of persons and seek to accomplish the same ends; they should be interpreted separately only if. there are clear textual differences between the two statutes that would indicate materially different meanings to them.
The majority reads the “duty of employment” language in the PMWA regulation as imposing an additional limitation in the PMWA that is not present in the FLSA, I disagree. First, as the majority notes, the FLSA regulation states that when an employee is required to travel during normal working hours, “[t]he employee is simply substituting travel for other duties” of employment.[15] The modifier “other,” when placed before “duties,” suggests that the FLSA regulation contemplates travel away from one’s home community as compensa-ble only when it is itself a duty of employment.
Treating the FLSA as lacking a “duty” requirement would lead to ludicrous results. The majority reads the FLSA to state that travel “becomes a compensable employment duty merely by occurring during regular working hours,” which it suggests is a material difference from the PMWA provision. Yet this reading of the FLSA as lacking an independent duty inquiry would make travel for any purpose whatsoever during normal working hours compensable. Because such a literal reading of the FLSA regulation would expose employers to extraordinary liability, district courts in this Circuit have agreed with parties who argued that the regulation “only applies to employees required to travel for work away from their home overnight.”[16] Thus, although the specific phrase “as part of the duties of the employee” is missing from the FLSA regulation, it is clear that such a limitation does exist. Accordingly, I would find that the PMWA regulation substantially parallels the FLSA, and use the analogous FLSA regulation in interpreting the PMWA.
*111 The FLSA regulation does not require an employee to perform any additional tasks during the course of their travel in order for the time to be compensable. Accordingly, the FLSA provides no basis for imposing a legal bar to recovery on Espinoza’s travel time. The parties agree that Espinoza’s travel would be a compensable duty under the FLSA regulation as “travel away from the home community,” and I would read the PMWA to provide at least as much protection.
Finally, even assuming that the majority is correct that “duty” has the narrow plain meaning which the majority seems to employ, that alone would not resolve this matter. We have noted that even the plain meaning of statutory language is not conclusive “when ‘the literal application of a statute will produce a result demonstrably at odds with the intentions of the drafters.’”[17]. The PMWA was enacted to prevent employers from paying their employees in ways “not fairly commensurate with the value of the services rendered.”[18] The Pennsylvania legislature was expressly cognizant of the fact that employees “are not as a class on a level of equality in bargaining with their employers” with respect to their wages.[19] Pennsylvania law makes clear that, save narrowly defined exceptions, statutes “shall be liberally construed to effect their objects and to promote justice.”[20] Particularly in the context of labor statutes, terms “must be interpreted ... by taking into account such considerations as the necessity for and the circumstances surrounding the enactment of the statute, the evil which it sought to remedy and the object which was to be attained.”[21]
Under a narrow conception of “duty,” an employer could require an employee to engage in some nontrivial actions—such as driving up to 10 hours at a time—and simply define such actions as “ancillary” to the employee’s main duties to avoid the requirement of compensation. Particularly in the case of workers who cannot engage in any aspect of their employment without being on a work site, and whose work sites are variable and unpredictable, I would not say that travel alone cannot, as a matter of law, be considered a “duty” of employment.
In support of its holding to the contrary, the majority relies almost entirely on the nonprecedential dissenting opinion of two justices of the Pennsylvania Supreme Court in the case of Caiarelli v. Sears, Roebuck & Co., which involved service repair technicians who sought compensation for time spent traveling to various sites to perform maintenance and repair services for the defendant’s customers. The trial court granted summary judgment in favor of the defendant, and the Pennsylvania Superior Court affirmed in an unpublished opinion. The Pennsylvania Supreme Court granted the employees’ petition for appeal, but subsequently dismissed the appeal as improvidently granted, with two justices dissenting. The majority reads the dissent in Caiarelli to stand for the idea that travel alone—without the performance of some additional work—cannot constitute a “duty” of employment as a matter of law. I disagree for three reasons. First, Atlas and the majority overstate the' Caiarelli *112 dissent’s claims; rather than stating a broad rule about the compensability of commuting time, the dissent •merely criticizes the Superior Court’s miseharaeterization of the claimed hours as commuting time. The dissent goes only so far as to hold that the performance of additional duties during travel is sufficient to make such travel compensable; never does it suggest that the performance of additional duties is required. Contrary to the majority’s reading, the dissent dedicates no discussion to the question of when travel alone may constitute a duty under the PMWA.
Second, the Caiarelli case was resolved at a motion for summary judgment, after the parties had engaged in full factual discovery to determine the exact scope of the employees’ “duties” of employment. This critical procedural distinction from the casé at bar cannot be ignored, given the fact-specific nature of “duty.” To the extent that the Caiarelli dissenters made any statement about whether the employees’ travel was a duty of employment, it was necessarily limited to that particular employment relationship, which was explored through discovery.
Third, regardless of the dissent’s breadth, its persuasiveness is marginal at best; it remains merely the dissenting view of two justices in an appeal from an unpublished Superior Court order which the Pennsylvania Supreme Court ultimately dismissed as improvidently granted. The dissent alone cannot tell us how the full bench of the Pennsylvania Supreme Court might answer the question.
In light of the scope of the term “duty” and the broadly remedial policies underlying the PMWA, the question of whether Espinoza’s travel was a compensable “duty” requires a fact-specific analysis of the exact context of his employment, rendering it an inappropriate basis for dismissal at the pleading stage. Particularly because Espinoza’s pleadings do allege some of the facts that the majority says “may shed light on whether travel is part of the employee’s duties,” I would hold that Espinoza has alleged sufficient facts to state a plausible claims for relief.
III.
I would also reverse the District Court’s determination that Espinoza’s travel did not take place during “normal working hours”—a determination that both parties agreed at argument was in error.[22]
Once again, our analysis of the meaning of a statutory phrase must begin with the text. The District Court’s analysis of this question was cursory, and simply stated that “[t]ravel before or after [Espinoza’s] eight-day work period necessarily falls outside [Espinoza’s] normal working hours.”[23] Thus, it appears that the District Court determined that “normal working hours” under the PMWA are coextensive with “scheduled working hours.” This determination flies in the face of the PMWA regulation’s text; the implementing regulations expressly make use of the phrase “scheduled working hours” to refer to an employee’s actual schedule of work in other sections.[24] We cannot simply read the two *113 phrases to have the same meaning without ignoring the agency’s conscious decision to use different language in describing' com-pensable hours. In order to fully effect the intent of the agency and legislature, we must assume that “normal working hours” has a meaning distinct from “scheduled working hours.”
Since the meaning of the phrase is not clear from the face of the regulation, I would look to the meaning of the phrase as used in the analogous provisions of the FLSA regulations because, as shown above, the regulations “substantially parallel” the PMWA regulation. At various points in the FLSA regulations, “normal working hours” is used in connection with additional limiting language when referring to the hours for which an employee actually works. For example, the FLSA’s implementing regulations refer to “[an] employee’s normal working hours on days when he is working.”[25] Because we must read statutes to avoid surplusage, “on days when he is working” must be some limiting qualifier on “normal working hours,” suggesting that the phrase must include at least some hours on days where an employee is not working. This broader reading of the phrase would also support the PMWA’s underlying purposes: limiting the potential for abusive wage practices by employers. A reading of “normal working hours” as identical to “scheduled working hours”.would exacerbate the disparity in bargaining power between employer and employee, as employers exercise sole control over employees’ schedules. Taking this reading to its extreme, nothing would stop an employer from “scheduling” an employee to work only a small number of hours, but requiring the employee to complete duties deemed “ancillary” to the job outside of this scheduled shift. This would reduce an employee’s shift hours, thereby artificially lowering the employee’s compensation. Because such a result would clearly undermine the goals of the PMWA, I believe that the phrase “normal working hours” may include hours outside of an employee’s actual scheduled shifts.
IV.
Because I believe the majority’s decision takes an overly narrow view of what may constitute a duty of employment under the PMWA and thereby creates a new legal bar to recovery for employees seeking to vindicate their rights, I respectfully dissent.

. Maj. Op. at 9.

. See Oral Arg. Recording at 28:22-29:05, http ://www2. ca3 .uscourts.gov/oralargument/ audio/16-1413Espinozav. AtlasRailroad.mp3 (acknowledging that Atlas paid for the housing facilities).

. See, e.g., Carey v. Nat’l Event Servs., Inc., No. 14 CV 5006, 2015 WL 667519, at *5 (E.D. Pa. Feb. 13, 2015) (noting that the scope of an employee's duties, for purposes of analyzing whether employee fell within an exemption to the FLSA, is a “fact-specific inquiry”); Giovanelli v. D. Simmons Gen. Contracting, No. 09 CV 1082, 2011 WL 2470591, at *2 (D.N.J. June 17, 2011) (stating that “the analysis leading to the [finding] of a duty ... is both fact specific and principled” (internal quotation marks and citation omitted)); In re Quintus Corp., 397 B.R. 710, 716 (D. Del. 2008) (stating that determining the existence and scope of a duty "requires a fact-specific determination by the [c]ourt”); U.S. Claims, Inc. v. Flomenhaft, 519 F.Supp.2d 532, 540-41 (E.D. Pa. 2007) ("[T]he existence of a ... duty is a fact-specific inquiry generally ill-suited for dismissal at the Rule 12(b)(6) stage.”).

. Penn. Federation of the Bhd. of Maintenance of Way Empls. v. Nat'l R.R. Passenger Corp. (AMTRAK), 989 F.2d 112, 115 (3d Cir. 1993) (second alteration in original).

. Maj. Op. at 11 n.7. The majority explicitly states that “whether the employer pays his overnight expenses” and "whether the work site is in a fixed location” are relevant considerations in finding a duty. Id.

. Maj. Op. at 10.

. United States v. Geiser, 527 F.3d 288, 294 (3d Cir. 2008)

. Black’s Law Dictionary 580 (9th ed. 2009).

. Id. at 1179 (emphasis added).

. Id. at 580-81.

. This interpretive canon has been codified by the Pennsylvania legislature. 1 Pa. C.S.A. § 1932. Courts have applied the canon with equal force to regulations. See, e.g., Highway News, Inc. v. Pa. Dep't of Transp., 789 A.2d 802, 808 (Pa. Commw. Ct. 2002) ("[I]t is well settled that the rules of statutory construction apply to regulations as well as to statutes.”).

. Baum v. Astrazeneca LP, 372 Fed.Appx. 246, 248 n.4 (3d Cir. 2010) (quoting Commonwealth of Pa. Dep't of Labor & Indus., Bureau of Labor Law Compliance v. Stuber, 822 A.2d *110 870, 873 (Pa. Commw. Ct. 2003), aff'd, 580 Pa. 66, 859 A.2d 1253 (2004)).

.See, e.g., id. at 248-49 (interpreting the administrative exemption of the PMWA using FLSA implementing regulations); Mazzarella v. Fast Rig Support, LLC, No. 13 CV 2844, 2014 WL 2861027, at *3-*4 (M.D. Pa. June 23, 2014) (treating motor carrier exemption under PMWA as coextensive with federal motor carrier exemption despite different language); Vanstory-Frazier v. CHHS Hosp. Co., LLC, No. 08 CV 3910, 2010 WL 22770, at *9 (E.D. Pa. Jan 4, 2010) (noting that although many of "the[ ] exemptions under the PMWA are not identical to FLSA’s criteria, ... the tests are sufficiently similar that the court’s analysis regarding the FLSA exemptions also . applies to the PMWA exemptions”).

. Masterson v. Fed. Exp. Corp., No. 07 CV 2241, 2008 WL 5189342, at *3 (M.D. Pa. Dec. 10, 2008) (citing 1 Pa. C.S.A. § 1932) (using this aspect of Pennsylvania’s interpretive statute to find the FLSA and the PMWA coextensive).

. 29 C.F.R. § 785.39 (emphasis added).

. Mundell v. DBA/DMC Mining Servs. Corp., et al., No. 12 CV 2614, 2013 WL 5674558, at *11 (M.D. Pa. Aug. 23, 2013) (emphasis added), report and recommendation adopted in part, 2013 WL 5675575 (M.D. Pa. Oct. 17, 2013).

. Byrd. v. Shannon, 715 F.3d 117, 123 (3d Cir. 2013) (quoting United States v. Ron Pair Enterprises, Inc., 489 U.S. 235, 242, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989)).

. 43 P.S. § 333.101,

. Id.

. 1 Pa. C.S.A. § 1928(c).

. Kulzer Roofing, Inc. v. Commonwealth of Pa., Dep’t of Labor & Indus., 68 Pa.Cmwlth. 642, 450 A.2d 259, 260-61 (1982).

. See Oral Arg. Recording at 5:30-5:50, 31:05-31:50, http ://www2. ca3 .uscourts .gov/ oralargument/audio/16-1413 Espinozav. Atlas Railroad.mp3 (agreeing to the definition of “normal working hours”).

. App. 9a.

.See, e.g., 34 Pa. Code § 65.22(a)(3)(ii) (stating that an employment offer must include "[t]he scheduled working hours during each day of the week”); 34 Pa. Code § 63.64(a)(7) (requiring employers to keep records of "[a]ll scheduled hours and hours worked”).

. 29 C.F.R. § 785.43 (emphasis added).