CONCURRING IN PART AND DISSENTING IN PART SUTTON, Circuit Judge, concurring in part and dissenting in part. I agree with the court that, the plaintiffs’ match-making duties fall within the administrative exemption, but I cannot agree that their sales duties do not. ■ The plaintiffs’ own testimony demonstrates that they exercised considerable discretion in marketing Randstad’s services within their assigned territories. Perry testified that, as a staffing consultant, she had to identify prospective new customers, classify those prospects as top or secondary priorities, and select networking events to attend. Perry also selected prospective clients to take out to meals, approximately “three times a month.” R. 67-6 at 14. When marketing to existing clients, Perry would show- .them the resumes of job candidates she thought, might have “potential for a client” based on her knowledge of that client’s needs. Id. at 10. The objective of all this on-your-own sales activity was to generate 1.5 new clients, and to check in with 6 existing clients, each month. Dooling provided fewer details about her sales duties, but her description of the job parallels Perry’s. On these facts, the staffing consultants’ sales duties “include[d] the exercise of discretion and independent judgment with respect to matters of significance.” 29 C.F.R. § 541.200(a)(3). Case law shows as much. In Smith v. Johnson & Johnson, the Third Circuit held that a pharmaceutical sales representative fell within the administrative exemption. 593 F.3d 280, 285 (3d Cir. 2010). Johnson & Johnson gave Smith a “target list” of doctors in her assigned territory and required her to complete ten visits per day. Id, at 282. The list also identified “high-priority” doctors, and Smith could choose to visit these doctors more often than the others. She received a budget for those visits, which' she could use to take doctors to lunch or to put on seminars. Id. Because Smith decided for herself how to woo those high-priority customers, the Third Circuit determined that Smith’s position required her to use discretion and independent judgment to “form a strategic plan designed to maximize sales in her territory.” Id, at 285. The Seventh Circuit followed suit in Schaefer-LaRose v. Eli Lilly & Co., 679 F.3d 560 (7th Cir. 2012). The pharmaceutical sales representatives in that case received “specific call plans identifying the physicians to be visited and the degree of frequency or priority category for each physician,” but nonetheless applied “strategic analysis to their work, choosing to see physicians not on their call plans or non-physicians who may influence prescribing patterns.” Id. at 581; see also Reich v. John Alden Life Ins. Co., 126 F.3d 1, 13-14 (1st Cir. 1997) (holding that insurance marketing representatives exercised discretion and independent judgment). With respect, I am not persuaded by the court’s attempt to distinguish these cases. The court points to the nature of the commodities being sold rather than how employees convinced clients to buy them. Randstad’s employees, the court says, sold talent, not complex prescription drugs in a highly regulated environment. But which way does that cut? For the pharmaceutical sales representative, there may be a correct (if complicated) answer to how a drug dissipates in the body after a subcutaneous injection. But for Randstad’s employees, there often will not be a scientific answer to whether a particular candidate meets a client’s “intangible” staffing needs or is a good fit for that company’s “culture.” Answering the former question requires flash cards; answering the latter requires judgment. The court suggests, .alternatively, that Randstad’s, employees exercised less discretion because they were subject to greater supervision. If anything, the staffing consultants in this case exercised more discretion because they identified and prioritized prospective clients on their own, while the pharmaceutical representatives received prioritized lists of doctors from their employers. For that reason, Rand-stad’s staffing consultants would still be exempt even under the one opinion coming to a contrary conclusion on pharmaceutical sales representatives. See In re Novartis Wage & Hour Litig., 611 F.3d 141, 157 (2d Cir. 2010), abrogated on other grounds by Christopher v. SmithKline Beecham Corp., 567 U.S. 142, 132 S.Ct. 2156, 183 L.Ed.2d 153 (2012). That the staffing consultants considered criteria and followed timetables set by Randstad . does not eliminate discretion from this work. Most employers set business objectives and direct employees to perform certain tasks as part of a job. But that says nothing about how an employee goes about achieving those, objectives or performing those tasks. The plaintiffs considered. Randstad’s criteria and followed its scheduling requirements when matching job candidates with clients, but that does not make those actions any less discretionary. The staffing consultants made strategic sales decisions on their own, without interference from their managers, even if those managers sometimes told them how to divide their time between sales and recruiting. It’s also true that the staffing consultants performed a number of non-discretionary tasks as part of their sales duties, such as making cold calls, writing personal notes, and knocking on businesses’ doors. But all administrative positions include some required legwork. The pharmaceutical representatives spent substantial time driving and filling out paperwork, see Smith, 593 F.3d at 283, but they qualified for the administrative exemption because that more menial work served the “strategic [sales] plan” they developed using their independent judgment, id. at 285. So too here. For these reasons, I respectfully concur in part and dissent in part.